Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES

| | | |
|---|---|---|
| SERENITY BY THE SEA, INC.<br><br>Apelante<br><br>v.<br><br>SCOTIABANK DE PUERTO RICO ANTES, AHORA ORIENTAL BANK<br><br>Apelado | KLAN202200111 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número:<br>D AC2012-3035<br>cons. con<br>D AC-2019-0058<br><br>Sobre:<br>Incumplimiento de Contrato, Daños y Perjuicios, y Otros |

Panel especial integrado por su presidente, el juez Rivera Torres, la juez Santiago Calderón, la juez Álvarez Esnard y la juez Aldebol Mora[1].

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Comparece la parte apelante, Serenity By The Sea, Inc., y nos solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 12 de abril de 2021, notificada el 21 del mismo mes y año. Mediante el referido dictamen, el foro primario desestimó, sin perjuicio, la causa de acción por incumplimiento contractual y, en su consecuencia, determinó que la indemnización de daños por dicha acción era improcedente. A su vez, la parte apelante recurre de la *Resolución* emitida y notificada, en igual fecha que el antedicho dictamen, por el mismo foro. En esta, el foro *a quo* declaró No Ha Lugar dos solicitudes de sentencia sumaria promovidas por las partes, respectivamente.

Posteriormente, la parte apelada instó una moción de desestimación por incumplimiento con el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, a la cual se opuso la parte apelante.

---

[1] Mediante Orden Administrativa OATA-2023-001 de 9 de enero de 2023, se designó a la Hon. Waleska Aldebol Mora en sustitución de la Hon. Olga E. Birriel Cardona.

Por los fundamentos que expondremos a continuación, se declara No Ha Lugar la solicitud de desestimación y se confirma el dictamen apelado.

I

El 4 de marzo de 2014, Serenity by the Sea, Inc. (Serenity o apelante) incoó una *Demanda* sobre daños y perjuicios, *culpa in contrahendo* e interferencia torticera con relaciones contractuales, en contra de Scotiabank de Puerto Rico (Scotiabank o apelada)[2], en la cual solicitó una indemnización por $630,000.00, más las costas, gastos y honorarios de abogado. Según surge de la referida acción, esta tuvo su génesis con un contrato de opción de compraventa suscrito el 3 de abril de 2012 entre Serenity y Scotiabank, relativo a un terreno en el cual ubicaba un proyecto de vivienda conocido como "Proyecto Cove by the Sea" (Proyecto). La parte apelante indicó que este terreno había sido adquirido por Scotiabank, el 29 de febrero de 2012, en un procedimiento de venta judicial. Señaló que el Proyecto de vivienda, sometido al régimen de propiedad horizontal, contaba con ochenta y cuatro (84) unidades, de las cuales veintitrés (23) ya estaban vendidas y sesenta y una (61) estaban disponibles para la venta. Surge de la demanda, que el Proyecto fue opcionado a la apelante por un precio de $4,100,000.00, los cuales serían pagaderos al momento del cierre. Serenity sostuvo que, para realizar la opción, entregó un depósito por la suma de $100,00.00, de los cuales $50,000.00 serían rembolsables, sujeto a que esta pintara los edificios y terminara la verja exterior del complejo. Planteó que tendría un periodo de ciento veinte (120) días para ejercer su derecho a la opción de compra, cuyo término comenzó a decursar desde la firma del acuerdo el 3 de abril de 2012.

Serenity arguyó en su demanda que, una vez suscrito el contrato de opción entre las partes, advino en conocimiento de que la escritura matriz, en la cual se sometía el Proyecto al régimen de propiedad horizontal,

---

[2] Apéndice 15 del recurso, págs. 604-616. Cabe destacar que este pleito fue originalmente presentado en contra de Scotiabank de Puerto Rico, quien se fusionó con Oriental Bank, el 31 de diciembre de 2019, siendo esta última la entidad subsistente.

adolecía de deficiencias que impedían que pudiera adquirir los apartamentos restantes. Argumentó que ello era un impedimento para poder ejercer el contrato de opción. Alegó, además, que esas deficiencias consistían en que no se describió correctamente la cabida de varios apartamentos y que el total del porcentaje de titularidad en los elementos comunes generales no sumaban el cien por ciento (100%). Adujo que estos defectos afectarían cualquier transacción posterior que se presentara en el Registro de la Propiedad sobre dicho inmueble, incluyendo cualquier escritura de compraventa que las partes pudieran otorgar para la adquisición del remanente del Proyecto, así como las escrituras de compraventa suscritas entre esta con futuros compradores de los demás apartamentos. Debido a tales deficiencias, Serenity alegó que le solicitó a Scotiabank la extensión del plazo para ejercitar la opción de compraventa, el cual fue extendido en distintas ocasiones, hasta quedar establecido el 18 de octubre de 2012 como la fecha límite para que la apelante ejerciera la opción. Indicó que, vencido este plazo, Scotiabank se negó a otorgarle una nueva prórroga, procedió a solicitarle el desalojo de la propiedad y le prohibió la entrada a la misma.

Según alegó Serenity, creyendo que Scotiabank estaba en posición de cumplir con su parte del Proyecto, incurrió en gastos ascendentes a $229,000.00 por concepto de mejoras, rehabilitación de treinta (30) apartamentos, publicidad y promoción del Proyecto residencial. Afirmó, además, haber incurrido en gastos por $300,000.00 como resultado de la tramitación del contrato, servicios legales, compañías de estudios de títulos y gastos para la obtención del financiamiento, con el objetivo de lograr la compraventa final. De otro lado, arguyó que Scotiabank incumplió con el deber de lealtad y de negociar de buena fe durante todo el proceso conducente a la contratación final, debido a que no hizo esfuerzo alguno por subsanar los errores de la escritura matriz del Proyecto. Sobre ese particular, argumentó que no le permitieron proseguir con los esfuerzos conducentes a la culminación del contrato y lo obligaron a cesar sus actos

de posesión después de los gastos ya incurridos. Además, planteó que no le entregaron información importante y pertinente para la obtención del financiamiento final del Proyecto.

Según se desprende del expediente del caso, esta acción de parte de Scotiabank provocó que, el 18 de octubre de 2012, Serenity recurriera a los tribunales con una *Solicitud de Sentencia Declaratoria Juramentada*[3] (Civil Núm. DAC2012-3035), en la cual le solicitó al foro primario que emitiera una sentencia declarando que: (1) el contrato otorgado era uno de opción y no uno de compraventa; (2) Scotiabank incumplió con el referido contrato por "no hacer la cosa disponible durante el periodo del contrato"; (3) se suspendiera el plazo de caducidad del contrato hasta que quedara superada la deficiencia de la escritura matriz; (4) se le concediera un plazo adicional para ejercer la opción, y (5) se le prohibiera a Scotiabank incurrir en actuaciones voluntarias, negligentes o dolosas que pudieran frustrar su expectativa de adquirir el Proyecto.

Por su parte, el 22 de febrero de 2013, Scotiabank presentó una *Contestación a la Solicitud de Sentencia Declaratoria y Reconvención.*[4] En esencia, aceptó haber suscrito el contrato de opción con Serenity. Alegó que el contrato era uno claro, por lo cual debía interpretarse conforme a su letra. En cuanto a los gastos adicionales que reclamó la apelante, Scotiabank adujo que este no autorizó a que los mismos fuesen realizados y que Serenity los hizo por cuenta propia. Indicó que la apelante asumió el riesgo debido a que aún no había comprado, ni adquirido realmente el Proyecto, ya que, para ello, se requería un pago que nunca había satisfecho y un cierre que no había ocurrido. Arguyó, finalmente, que no existía un defecto en la escritura matriz y que, de existir el mismo, este no era un impedimento para la compraventa del terreno ni de las edificaciones.

Así las cosas, el 4 de septiembre de 2013, el foro primario desestimó la demanda y determinó que el contrato suscrito entre las partes era uno

---

[3] Apéndice 21 del apéndice enmendado, págs. 640-652.
[4] Apéndice 20 del apéndice enmendado, págs. 633-639.

de compraventa y no de opción.[5] Concluyó que Scotiabank no le brindó a Serenity representación o garantía legal alguna en cuanto al Proyecto, por lo que Serenity se obligó a adquirir el mismo en la condición en la cual estaba. Resolvió que Serenity incumplió contractualmente con su obligación de traer el precio de compraventa el día del cierre; que los alegados impedimentos que tenía Scotiabank para vender la propiedad eran infundados; que Scotiabank no incumplió con el contrato; y que, conforme a los términos contractuales, Scotiabank tenía que rembolsarle a Serenity $50,000.00 que fueron entregados como depósito de la opción.

Inconforme, el 24 de junio de 2015, Serenity presentó un recurso de apelación con la designación alfanumérica KLAN201401115. Evaluado el recurso, el 24 de junio de 2015, un panel hermano de este Tribunal de Apelaciones emitió una *Sentencia* en donde modificó la determinación apelada para aclarar que el contrato suscrito entre las partes no era de compraventa, sino de opción a compraventa y que, por tanto, Serenity no había incumplido el mismo, ya que estaba en discreción para hacerlo.[6] En cuanto a la alegación de que los errores registrales de la escritura matriz del Proyecto impedían el cumplimiento fiel del contrato de opción de compra, esta Curia, luego de examinar la Cláusula 1(b) del contrato en cuestión, determinó que, el hecho de que la escritura matriz de régimen de propiedad horizontal fuera presentada ante el Registro de la Propiedad con deficiencias, no impedía que el dominio pudiera trasladarse mediante un contrato de compraventa. En vista de ello, devolvió el caso al Tribunal de Primera Instancia para que este dilucidara si procedía la indemnización de la apelante por las mejoras que realizó en el inmueble por una suma que era mayor a la acordada en el contrato.

Luego de varios trámites procesales, entre ellos la consolidación de los casos, ambas partes radicaron mociones dispositivas. En particular, el 11 de diciembre del 2020, la apelante instó una *Moción Solicitando*

---

[5] Apéndice 19 del apéndice enmendado, págs. 625-632.
[6] Apéndice 14 del recurso, págs. 564-603.

*Sentencia Sumaria Parcial* en la que le solicitó al foro de instancia que resolviera que no existía controversia sustancial de hechos en cuanto a que la apelada incumplió con el contrato de opción suscrito por las partes.[7] Ese mismo día, la apelada sometió una *Moción de Sentencia Sumaria* solicitando la desestimación de la causa de acción de incumplimiento contractual.[8] Argumentó que no existía evidencia que sustentara dicha acción. Así mismo, sostuvo que tampoco procedía, el reembolso de los gastos a favor de la apelante, por no exceder estos de $50,000.00 que contractualmente se comprometió a realizar.

En respuesta, el 13 de enero de 2021, Scotiabank presentó su oposición a la solicitud de sentencia sumaria de Serenity.[9] Argumentó que la apelante insistía en reafirmar argumentos que ya había levantado en casos anteriores, los cuales habían sido atendidos y rechazados por otros tribunales a nivel de instancia y apelativo. En atención a las alegaciones sobre los errores notificados por el Registrador de la Propiedad, argumentó que el representante legal de Serenity admitió, bajo juramento, que el banco no tenía conocimiento del problema registral hasta que fue informado por su representado, previo a la notificación del Registrador.

---

[7] Apéndice 12 del recurso, págs. 420-507. Junto a su moción, la parte apelante presentó los siguientes documentos: (1) Informe de segregaciones del condominio The Cove By The Sea del 21 de julio de 2016; (2) Certificación de Propiedad Inmueble; (3) Informe del Global Risk Management de Scotiabank; (4) Contrato de Opción entre Scotiabank y Serenity; (5) Declaración jurada de José Rodas Nazario del 11 de diciembre de 2020; (6) Informe interno de Scotiabank del 18 de mayo de 2012; (7) Notificación del Registro del 9 de julio de 2012; (8) Correo electrónico de Rafffucci a los condominios de Cove del 18 de mayo de 2012; (9) Indemnity Agreement del 12 de junio de 2012; (10) Documentos relacionados a la aprobación del Federal Home Loan Administration; (11) Copias de correos electrónicos entre Serenity y Raffucci en relación a la aprobación de la FHA; (12) Factura por los trabajos de corrección de la escritura matriz del 14 de mayo de 2012; (13) Copia de carta de Sacarello el 18 de septiembre de 2012 en relación a la concesión de la prórroga solicitada; (14) Copia de carta de Sacarello, el 17 de septiembre de 2012, solicitando una segunda prórroga; (15) Carta de Scotiabank a Serenity concediendo la prórroga; (16) Carta del Lcdo. Manuel Rodríguez López, del 15 de octubre de 2012, a Scotiabank solicitando suspender el plazo resolutorio; (17) Copia de terminación el contrato de opción; (18) Certificación Registral del 3 de septiembre de 2020.

[8] Apéndice 13 del recurso, págs. 508-563. Junto a su moción, la parte apelada presentó los siguientes documentos: (1) Sentencia del Caso Núm. DCD 201-2419; (2) Comunicado de Prensa del FDIC del 30 de abril de 2010; (3) Transcripción de la toma de deposición del Sr. Alfonso Sacarello; (4) Escritura de Venta Judicial Núm. 9 del 2012; (5) Estudio de título del mes de marzo de 2013; (6) Transcripción de la toma de deposición del Sr. José Rodas; (7) Contrato de Opción de Compraventa del 3 de abril de 2012; (8) Sentencia del 24 de junio de 2015 el Tribunal de Apelaciones; (9) Correo electrónico del Lcdo. Raffuci el 24 de mayo de 2012; (10) Indemnity Agreement del 12 de junio de 2012; (11) Solicitud de Revisión de la Decisión Administrativa (12) Transcripción de la toma de deposición del Lcdo. Carlos H. Raffuci Caro; (13) Carta a Rodas del 4 de abril de 2011; (14) Carta del 21 de enero de 2012; (15) Gastos costeados por Scotiabank y propuestas de servicios, entre otros; (16) Facturas de Publicidad de 2011.

[9] Apéndice 11 del recurso, págs. 366-419.

Sobre este particular, Scotiabank alegó que dos meses antes de que el Registrador les notificara el error, Serenity le había hecho un acercamiento para la subsanación de las escrituras, por lo que la apelante tenía conocimiento previo del alegado error registral. Arguyó que, una vez Serenity advino en conocimiento de la existencia de los defectos en la escritura matriz, asumió el gasto de la subsanación, ascendente a $4,850.00. Añadió que, para el mes de junio de 2012, dos meses antes de que venciera la primera fecha de expiración del contrato de opción, los titulares del Proyecto y la mayoría de los residentes habían firmado las actas de subsanación. Según adujo, a esa fecha, dos de los tres errores habían sido corregidos en su totalidad y el tercer asunto ya estaba en proceso de corrección. Señaló, también, que Serenity comenzó a invertir dinero en el Proyecto mucho antes de haber firmado el contrato de opción. Planteó que ello ocurrió cuando el banco se encontraba buscando compradores para el Proyecto, tenía varios interesados y Serenity no tenía seguridad alguna de que le concederían la opción a compra.

Scotiabank enfatizó en su oposición que el Tribunal de Apelaciones había resuelto que: (1) el objetivo del contrato era la compraventa; (2) Scotiabank tenía la capacidad de transferir el dominio del Proyecto mediante compraventa; (3) la situación registral no era impedimento para el ejercicio del contrato de opción en cuestión. Sostuvo que esas determinaciones de hecho y derecho eran finales y firmes, por tanto, constituían la ley del caso. Finalmente, argumentó, que Serenity se apresuró, tomó malas decisiones y se confió sin el conocimiento del banco y sin garantía legal alguna, invirtiendo en el Proyecto de manera desmesurada. Añadió que la realidad era que Serenity nunca tuvo el capital necesario para adquirir el Proyecto.

Por su parte, el 19 de enero de 2021, la apelante presentó su contestación al petitorio sumario instado por la apelada.[10] En esta, alegó que Scotiabank, una vez adquirió el Proyecto, se lo opcionó sin verificar si

_____
[10] Apéndice 10 del recurso, págs. 277-365.

las escrituras mediante las cuales el Proyecto había sido sometido al régimen de propiedad horizontal estaban en orden. Indicó que el propósito o intención del negocio, así como el contrato de opción, era adquirir el Proyecto. Arguyó que Scotiabank permitió que esta asumiera la posesión del Proyecto para que realizara mejoras y arreglos. Adujo que, cuando Scotiabank lo despojó de la posesión, ya había obtenido compromisos de opción con veintisiete (27) potenciales compradores. Señalo que, en ese momento, el Proyecto tenía siete (7) apartamentos terminados y listos para ser vendidos y entregados, lo cual lo ponía en posición favorable para conseguir el financiamiento. Además, argumentó que, luego de la sentencia del foro apelativo, en la cual resolvió que esta pudo haber comprado y no lo hizo, quedaba por resolver si, tratándose de un contrato de opción, estaba obligada a ejercer la opción que pactó con Scotiabank. Ello, aun cuando esta última había incumplido con ese contrato, ya que Scotiabank no tenía inscrito el régimen de propiedad horizontal del Proyecto al momento que exigió ejercer la opción.

En atención a las controversias planteadas, el 12 de abril de 2021, notificada el 21 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia Parcial* que nos ocupa, en la cual desestimó, sin perjuicio, la causa de acción sobre incumplimiento contractual y, a su vez, declaró improcedente la indemnización de daños por dicha acción.[11] El foro *a quo* fundamentó su determinación en que el contrato era uno de opción y el término fue extendido en dos ocasiones sin que la apelante ejerciera su derecho a la opción de compra. En virtud de ello, el foro primario concluyó que la apelante perdió su derecho sobre el contrato, así como el cincuenta por ciento (50%) del depósito. El mismo día, el foro apelado emitió una *Resolución* en la que declaró No Ha Lugar las solicitudes de sentencia sumaria promovidas por ambas partes, esto debido a que entendió que existían controversias sobre hechos medulares. Estos hechos fueron: (1) si Scotiabank autorizó a Serenity a asumir la posesión del

---

[11] Apéndice 7 del recurso, págs. 79-83.

Proyecto, antes de firmar el contrato de opción, para que este realizara las mejoras y reparaciones; (2) si los gastos que realizó Serenity por $229,000.00, en mejoras a la propiedad y publicidad excedió más allá de lo acordado y; (3) si el reembolso de $50,000.00 otorgado por Scotiabank a Serenity proveniente del depósito, cubre únicamente los gastos de mejoras realizados por la apelante que autorizó el Banco.[12]

Insatisfecha, el 6 de mayo de 2021, la parte apelante radicó una *Moción de Enmiendas y Determinaciones Adicionales de Hechos y de Derecho y Solicitud de Reconsideración*,[13] mediante la cual le solicitó al tribunal de instancia que declarara que no existía una controversia real y sustancial en cuanto al incumplimiento de Scotiabank con el contrato de opción para la adquisición del Proyecto. Igualmente, solicitó que se incluyera en las determinaciones de hecho que Serenity tenía derecho a no ejercer la opción hasta que se resolvieran los problemas de inscripción del régimen de propiedad horizontal. Por otro lado, solicitó que se declarara Ha Lugar la *Moción de Sentencia Sumaria Parcial* o que, en la alternativa, luego de examinar dicho petitorio, el foro apelado concluyera que existía una controversia material de hechos sobre algún elemento esencial y que el pleito continuara su trámite ordinario.

En desacuerdo, el 2 de junio del 2021, la apelada se opuso.[14] Arguyó que la conducta de Serenity y su representante había sido temeraria, intencional e inescrupulosa. Sostuvo que la apelante mintió sobre la preventa, el desembolso del financiamiento y la denegatoria para el financiamiento por la escritura matriz. Planteó que Serenity intervino con los residentes para dilatar el proceso de subsanación de la escritura matriz y que entabló procesos judiciales frívolos para obligar al banco a gastar dinero y recursos, a pesar de no asistirle la razón.

Evaluadas las posturas de las partes, el 18 de enero del 2022, el Tribunal de Primera Instancia emitió una *Resolución* en la que declaró No

---

[12] Apéndice 6 del recurso, págs. 67-78.
[13] Apéndice 4 del recurso, págs. 40-58.
[14] Apéndice 3 del recurso, págs.13-39.

Ha Lugar la solicitud de reconsideración promovida por la apelada.[15] Posteriormente, el 20 de enero del 2022, emitió una *Resolución Enmendada* mediante la cual atendió la moción de enmiendas y determinaciones adicionales de hecho y derecho y la reconsideración instada por la apelante y, de igual forma, la declaró No Ha Lugar.[16]

Inconforme con dicha determinación, el 22 de febrero de 2022, la parte apelante acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> Erró el TPI-BAY al dictar Sentencia Parcial y desestimar la segunda causa de acción por incumplimiento de contrato contenida en la demanda del caso K AC2014-0163 que fue radicada por la apelante el 4 de marzo de 2014 ante el TPI-SJ.

> Erró el TPI-BAY al negarse a enmendar la Sentencia Parcial del 12 de abril del 2021, para incluir las determinaciones adicionales de hechos y de derecho que le solicitara la apelante en su escrito de reconsideración.

> Erró el TPI-BAY y abusó de su discreción al denegar la Moción de Sentencia Sumaria Parcial de la apelante, ignorando sin fundamento algunos hechos materiales como lo fue el incumplimiento de la apelada con el contrato de opción para la adquisición del remanente del proyecto COVE y utilizar un análisis liviano para la misma y emitir una determinación que no se ajusta a derecho.

En cumplimiento con nuestra *Resolución* del 1 de marzo de 2022, el 24 de marzo de 2022, la parte apelada compareció mediante *Oposición a recurso de apelación*. Junto a su oposición, instó una *Moción de Desestimación de Apelación por Incumplimiento con el Reglamento del Tribunal de Apelaciones.* En síntesis, arguyó que, ante múltiples incumplimientos con las Reglas 13 y 74 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 13 y 74, el recurso no estaba perfeccionado. En particular, indicó que faltaban varios anejos y mociones pertinentes que la parte peticionaria no había incluido en su apéndice.

Por su parte, el 1 de abril de 2022, la parte apelante presentó una *Oposición a Moción de Desestimación*. Sostuvo que, aun cuando se hubieren cometido los errores señalados, no era razón suficiente para

---

[15] Apéndice 17 del recurso, pág. 623.
[16] Apéndice 18 del recurso, pág. 624.

desestimar el recurso, debido a que eran subsanables. En conjunto a su oposición la parte apelante presentó un apéndice enmendado en aras de subsanar dichos errores.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023; *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. et als. v. ELA et al.*, 2023 TSPR 24, 211 DPR ___ (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba

incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en

su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente

para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. et als. v. ELA et al.*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, supra; *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

**B**

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 2992, *NHIC et al. Garcia Passalacqua et al.,* 206 DPR 105, 118 (2021).[17] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes y deberán cumplirse según se hayan delimitado; *pacta sunt servanda*. Art. 1044 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3391; *Aponte Valentín et a. v. Pfizer Pharm.*, 208 DPR 263,284 (2021). Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581-582 (2000). En ese sentido, una vez perfeccionado el contrato, las partes se obligan no solo al

---

[17] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza, estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3375.

El contrato de opción a compra es el convenio por el cual una parte (promitente) concede a la otra (optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal; *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002); *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571 (1989). Los elementos esenciales de este tipo de contrato son los siguientes: (1) el optante tiene la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación de su parte; (2) dicha concesión es exclusiva; (3) se establece un plazo para ejercitar la opción, y, por último, (4) la única condición es la voluntad del optante. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001).

A tono con estos elementos, el Tribunal Supremo de Puerto Rico ha expresado que: "a pesar de ser un contrato consensual, la opción de compra es un contrato unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquél así lo decide". *S.L.G. Irizarry v. S.L.G. García*, supra, pág. 722. Así pues, el optatario viene obligado a no incurrir en actuaciones voluntarias, negligentes o dolosas que frustren la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 250. De incurrir en alguna de las actuaciones antes descritas, el prominente "incurrirá en responsabilidad contractual y el optante perjudicado podrá interponer una acción indemnizatoria contra el concedente que frustró o perjudicó el ejercicio de la facultad de optar". *Íd.*

Finalmente, cabe resaltar que el contrato de opción, por ser de naturaleza transitoria, puede ser principal o un pacto accesorio a otro,

como, por ejemplo, a un contrato de compraventa, sociedad, financiamiento, arrendamiento de cosas y servicios. *Mayagüez Hilton Corp. v. Betancourt,* supra, págs. 246-247; *Atocha Thom McAn, Inc. v. Registrador,* supra.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al dictar *Sentencia Parcial* desestimando la causa de acción por incumplimiento contractual. En su segundo señalamiento de error, plantea que el foro primario incidió al negarse a enmendar dicho dictamen para incluir determinaciones de hecho y conclusiones de derecho adicionales que solicitó la apelante en su escrito de reconsideración. Como tercer y último señalamiento de error, arguye que el foro *a quo* abusó de su discreción al denegar su Moción de *Sentencia Sumaria Parcial*.

Sabido es que, ante una solicitud de sentencia sumaria, esta Curia se encuentra en igual posición para efectuar un análisis *de novo* de los petitorios sumarios sometidos ante la consideración del foro primario. Tras evaluar las mociones sumarias presentadas y el expediente ante nos, colegimos que, ambas partes cumplieron sustancialmente con las formalidades y exigencias de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. De igual forma, el inciso (b) de la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2(b), establece que el juzgador no está obligado a hacer determinaciones de hecho cuando este así lo estime por la naturaleza del remedio solicitado.

Hemos examinado cuidadosamente de *novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

En su solicitud, la parte apelante señaló que, mediante la Cláusula 1(b) del contrato de opción, obtuvo de la apelada el derecho de adquirir el remanente de un Proyecto de vivienda sometido al régimen de propiedad

horizontal con sesenta y un (61) unidades que todavía permanecían sin vender, así como los terrenos remanentes adyacentes a este. Según arguyó en su petitorio sumario, para adquirir estas unidades, el régimen de propiedad horizontal debía estar inscrito en el Registro de la Propiedad. Argumentó, a su vez, que la Cláusula 3(i) del referido contrato establecía que, a la fecha del cierre, la apelada tenía que garantizar que poseía un título limpio, válido, mercadeable y registrable sobre el Proyecto para así poner a la apelante en la obligación de decidir si ejercía la opción o no. Sostuvo, que a la fecha en que la apelada le exigió que ejerciera la opción sobre el Proyecto, el régimen de propiedad horizontal del Proyecto no estaba inscrito. Por lo que, debido a que no pudo corregir las deficiencias señaladas por el Registro de la Propiedad para la inscripción correspondiente, la apelada había incumplido con el contrato de opción, pues nunca pudo ofrecer el objeto necesario para el contrato subsiguiente de compraventa; además de no tener un título limpio, válido, mercadeable y registrable sobre el Proyecto.

En oposición, la parte apelada alegó que la apelante insistía en reafirmar argumentos que ya habían sido considerados y adjudicados en los méritos por el Tribunal de Apelaciones, por lo que estos eran final y firme y constituían ley del caso. Arguyó que la apelante fundamenta sus alegaciones en un entendimiento errado de que el contrato de opción no podía ejecutarse si no se arreglaban los problemas registrales del Proyecto. Indicó que, en el KLAN2014041115, esta Curia había resuelto que Scotiabank tenía la capacidad de transferir el dominio del Proyecto mediante compraventa y que la situación registral no era impedimento para el ejercicio del contrato de opción en cuestión. Añadió que una lectura del contrato de opción en controversia revelaba que las partes acordaron entrar en un contrato preparatorio, por un término de ciento veinte (120) días para la futura compraventa del Proyecto, en la cual advertía, como condición determinada, que no daba garantías que no fuera la de poder transferir el título simple y sin gravámenes de la propiedad. Además, argumentó, que

el contrato reflejaba que la decisión de ejercitar el contrato de opción sería exclusivamente de la parte optante una vez tuviese oportunidad de realizar un *due diligence* que le permitiera investigar a fondo la condición de la propiedad. Ante ello, alegó que no se desprendía de dicho contrato disposición expresa o específica que confirmara que este garantizó un inmueble sometido al régimen de propiedad horizontal.

Surge de la *Sentencia Parcial* apelada que el foro *a quo* determinó que el término de ciento veinte (120) días que se le había concedido a Serenity para otorgar el contrato de compraventa había expirado y que, inclusive, este fue extendido en dos ocasiones. Concluyó que, al no ejercer la opción de compra dentro del plazo concedido, la apelante perdió su derecho sobre el contrato. A su vez, surge claramente del expediente ante nos que un panel hermano de esta Curia determinó que el hecho de que la escritura matriz del régimen de propiedad horizontal fuera presentada ante el Registro de la Propiedad y no estuviera inscrita, por aparentes errores, no impedía que el dominio sobre la propiedad pudiera trasladarse mediante un contrato de compraventa.

En el caso de autos nos encontramos ante un contrato de opción de compraventa mediante el cual se le otorgó a Serenity la facultad de decidir unilateralmente si ejercía dicha compraventa. Para ello, las partes pactaron un plazo para ejercer la opción y tenía un precio fijo cierto. Como establecimos anteriormente, dicho plazo fue extendido en dos ocasiones para darle la oportunidad a Serenity de ejercer la opción. Sin embargo, este no la ejerció, ello, basado en deficiencias en la escritura matriz. No obstante, según fue adjudicado previamente por un panel hermano de esta Curia, tales deficiencias no eran impedimento, para, de así querer, ejercer su derecho de opción dentro del referido término. Esto constituye una determinación final y firme, por lo que es la ley del caso.

Por otro lado, Serenity plantea que incurrió en gastos de reparación, mejoras, publicidad y financiamiento del Proyecto que debían ser reembolsados. En cuanto a este asunto el foro primario, en la *Resolución*

emitida el 21 de abril de 2021, determinó que si Scotiabank autorizó o no a Serenity a asumir la posesión del Proyecto, para que realizara mejoras y si los gastos que realizó excedían lo acordado era un hecho que se encontraba en controversia por lo que no podía resolverse por la vía sumaria. Así, coincidimos con el foro primario en que por existir hechos en controversia no procedía resolver por la vía sumaria.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia Parcial* desestimando, sin perjuicio, la causa de acción por incumplimiento contractual y, en su consecuencia, declarando improcedente la indemnización de daños por dicha acción. Tampoco erró el foro primario al emitir la *Resolución Enmendada*, del 20 de enero de 2022, en la cual declaró No Ha Lugar la *Moción De Enmiendas y Determinaciones Adicionales De Hechos y Derecho y Solicitud De Reconsideración* de la parte apelante. Por lo tanto, no se cometieron los errores señalados. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos que anteceden, declaramos No Ha Lugar la solicitud de desestimación y confirmamos los dictámenes apelados.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones